### Howard Shannon v. Axel Swanson.

96    275
s104   466
96    275
s109   274

1. VERDICTS—*Must Be Warranted by the Evidence.*—Where a verdict is not warranted by the evidence, the judgment based upon it will be reversed.

Trespass on the Case, for seduction. Error to the Circuit Court of De Kalb County; the Hon. GEORGE W. BROWN, Judge, presiding. Heard in this Court at the April term, 1901. Reversed and remanded. Opinion filed July 12, 1901.

WILLIAM L. PIERCE and W. C. KELLUM, attorneys for plaintiff in error.

CLIFFE & CLIFFE and H. A. JONES, attorneys for defendant in error.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was an action of trespass on the case brought by Axel Swanson against Howard Shannon to recover damages for an alleged seduction and alienation of the affections of Swanson's wife. There was a plea of not guilty, and upon the trial the jury returned a verdict in favor of Swanson for $3,000. A motion for a new trial was overruled and judgment entered for the amount of the verdict, from which Shannon appeals.

In March, 1899, Swanson and his wife, with their only

child, Harold, a son about six years of age, moved to Kirkland, De Kalb county, which was the home of Shannon. Shortly afterward Mrs. Swanson bought a house and lot of Shannon and partly paid for the same. She and her family moved into the house, which was situated between Shannon's residence and his place of business. Shannon was the son of a wealthy father, who had died, leaving him considerable property. Both he and Swanson, who was a tailor, were very intemperate, and soon became boon companions. During the summer of 1899 they were in each other's company nearly every day, and on numerous occasions were drunk together. It often happened that Swanson took Shannon home with him when the latter was intoxicated. In fact they appear to have made Swanson's house their place of drinking, and Swanson would often leave Shannon there while he went to get liquor for them to drink, Shannon paying the bill. Shannon's visits to the house appear from the evidence at all these times to have been with the knowledge and consent, and often at the request, of Swanson. On one occasion Swanson endeavored to induce his wife to go to the home of Shannon for dinner, but she refused to do so and a quarrel ensued between them. On July 30, 1899, Shannon took the wife and son of Swanson in a buggy and drove to a cemetery, between four and five miles distant. Swanson testified that his little son told him there was improper conduct between Mrs. Swanson and Shannon while they were at the cemetery; that a few days afterward he told Shannon of it, and that the latter made a remark concerning the unreliability of the statement of the boy. Shannon denies positively any such improper conduct, and as the son was not sworn there was no other evidence upon the subject. The two men, however, continued thereafter to be on intimate terms, and apparently associated and drank together the same as they had done before. About two weeks later there was a family disturbance at the home of Swanson late at night, which aroused the neighbors, who went to the house. Mrs. Swanson told them that her husband had choked her and that she ran through a door and locked it, and it appeared

there were scratches upon Swanson's neck, which he said she had made. Swanson testifies, however, that Shannon was with her in another room and that she had locked the door. Shannon also denied this statement, insisting that he did not go there until he went with the neighbors after the disturbance, and in this statement he is to some extent corroborated. On the next day after this occurrence Mrs. Swanson left her husband and caused her goods to be taken from the house. The testimony of the neighbors shows that Swanson was quarrelsome and abusive to his wife, and treated her harshly. It also appears that she had left home prior to the time last mentioned, but returned upon the promise on his part of a change of conduct. The second time she left, however, she did not return, but went with her effects to Rockford, Illinois.

The only proof of any improper intimacy between Shannon and Swanson's wife rested almost wholly upon the testimony of Swanson himself and was denied by Shannon. Swanson's reputation for truth was successfully impeached upon the trial. Even some of the supporting witnesses called by Swanson, admitted that his general reputation for truth and veracity was not very good, one of them stating that his reputation was not in that regard "A No. 1" for the reason that he would lie.

There was also some evidence tending to show that Swanson desired to bring about an intimacy between Shannon and his wife such as he had charged them with, and that he had said in such case he intended to make Shannon pay dear for it. However that may be, we are of opinion that the evidence in this case was not sufficient to warrant a verdict. We do not think the unsupported testimony of a man who is shown by the evidence to have abused his wife and whose reputation for truth and veracity was successfully impeached, sufficient to destroy the good name of the wife and justify a large verdict and judgment against a man he had continually brought into his home, when that man is unimpeached and denies the charges made against him without qualification. The judgment of the court below will be reversed and the cause remanded.